## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

|  |  |
|---|---|
| GEICO GENERAL INSURANCE COMPANY and GOVERNMENT EMPLOYEES INSURANCE COMPANY,<br><br>     Plaintiffs and Counterdefendants,<br><br>     v.<br><br>M.O. and M.B.,<br><br>     Defendants and Counterclaimant. | Case No. 21-2164-DDC-ADM |

## MEMORANDUM AND ORDER

Plaintiffs GEICO General Insurance Company and Government Employees Insurance Company (collectively "GEICO") seek a declaratory judgment to determine GEICO's rights and obligations for its insured allegedly spreading a sexually transmitted disease ("STD") while voluntarily having unprotected sex in the insured's automobile. GEICO's insured is defendant M.B., and he allegedly gave the STD to defendant M.O. M.O. demanded that GEICO pay her $1 million to resolve her claim against M.B., triggering GEICO to file this lawsuit. When GEICO filed the lawsuit, it named defendants M.O. and M.B. by their initials. The court subsequently ordered the parties to show cause why GEICO should not be required to file an amended complaint that names defendants by their full names and to state what corrective action is necessary to correct any defects in subject-matter jurisdiction. This matter is now before the court on the parties' responses and defendants' motion for leave to proceed anonymously or using their initials. (ECF 40-43.) For the reasons explained below, the court will allow the parties to proceed using defendants' initials pending the court's ruling on M.O.'s motion to dismiss for lack of personal

jurisdiction.  But, within seven days of that ruling, GEICO must file an amended complaint naming the remaining defendant(s) by their real names or the court will recommend that the district judge dismiss this action for lack of subject matter jurisdiction.

## I.    BACKGROUND

According to the filings in this case, M.O. and M.B. began having a sexual relationship in November and early December of 2017, including having unprotected sex in M.B.'s 2014 Hyundai Genesis.  (ECF 20-1 ¶ 8.)  M.O. alleges that M.B. had been previously diagnosed with anogenital human papillomavirus ("HPV"), which is highly contagious through sexual contact, but he did not tell M.O. about it or take measures to prevent transmitting the virus to M.O.  (*Id.* ¶¶ 6, 9.)  At M.O.'s regularly scheduled gynecology exam in November 2018, she was diagnosed with anogenital HPV.  (*Id.* ¶ 11.)  She later learned that she contracted the virus from M.B.  (*Id.* ¶ 13.)

M.B. had two GEICO insurance policies: a Kansas Family Automobile Insurance Policy that listed M.B.'s Hyundai Genesis and an umbrella policy.  (ECF 4 ¶ 20.)  On February 25, 2021, M.O. sent GEICO a demand letter that stated as follows:

> Here's the Petition that will be filed against your insured, [M.B.].
> Before doing so, we have been authorized to make one final attempt
> to resolve [M.O.'s] claims against your insured for the applicable
> limits of $1m. Let me know.

(ECF 27.)  M.O.'s draft state-court Petition for Damages asserted claims against M.B. for negligence and negligent infliction of emotional distress.  (*Id.* at 5-7.)  It referred to both M.O. and M.B. by their initials and stated that "[p]laintiff is referred to in this public filing by pseudonym name to maintain confidentiality of her identity."  (*Id.* at 3.)

According to GEICO, it investigated the claim and learned information that supported certain defenses.  For example, M.B. said that he told M.O. on three different occasions that he had been diagnosed with HPV-positive throat cancer; that M.O. had sexual partners other than

M.B. during the relevant time period; that the two had sex in locations other than the insured vehicle; that M.B. had never been diagnosed with HPV before 2017; and that another physician later told him that he did not in fact have HPV.  (ECF 43-4, at 3.)

On or about March 11, M.O. and M.B. entered into an agreement to settle M.O.'s claim against M.B. pursuant to MO. ANN. STAT. § 537.065.  (ECF 43-4, at 1.)  "An agreement under this provision expressly authorizes an insured to settle a personal injury or wrongful death action by agreeing that the plaintiff may collect the settlement only against the insurer."  *Allstate Ins. Co. v. Blount*, 491 F.3d 903, 907 (8th Cir. 2007) (citation omitted).  "It does not determine the insured's liability but merely limits enforceability of a judgment."  *Id.*  As a result, the agreement limited M.B.'s liability to M.O., but left M.B. free to pursue recovery from GEICO.  (ECF 43-6, at 2.) GEICO says that it did not know, at the time, that M.O. and M.B. had entered into the § 537.065 agreement.

GEICO filed this declaratory judgment action on April 7, using M.O. and M.B.'s initials. (ECF 1.)  The next day, GEICO filed an amended complaint (ECF 4), and days later filed a motion for leave to file under seal a reference list identifying defendants by their full names, unredacted versions of the insurance policies at issue that contain M.B.'s name, and the returned executed summonses.  (ECF 5 & 6.)  The court granted the motion, finding that GEICO had made a sufficient showing to justify the legal standard for sealing those documents, but the court stated that it would revisit the matter after defendants appeared and had an opportunity to be heard on the issue of proceeding anonymously.  (ECF 7.)

GEICO's amended complaint alleges that, for the two policies GEICO issued to M.B., liability coverage is identical for all relevant intents and purposes.  (ECF 4 ¶¶ 14-20.)  GEICO seeks a declaratory judgment that these policies do not provide coverage for M.O.'s alleged

injuries, and therefore GIECO has no duty to defend or indemnify M.B. against M.O.'s claim. Among other things, GEICO alleges that the auto policy only applies to bodily injuries arising "out of the ownership, maintenance or use of the . . . auto," and that M.O.'s alleged damages have no nexus to the ownership, maintenance, or covered use of the 2014 Hyundai Genesis.  In other words, the vehicle's covered use did not cause M.O.'s alleged injuries; instead, her injuries arose from an intervening cause—namely, her failure to prevent transmission of STDs by having unprotected sex.  (ECF 4 ¶¶ 29-32.)  Likewise, the umbrella policy does not provide coverage because it only applies if the auto policy provides coverage.  (*Id.* ¶¶ 36-37.)  GEICO also asserts that various policy exclusions preclude coverage under the umbrella policy.  (*Id.* ¶¶ 38-42.)

Again, GEICO says that it did not know at the time that M.O. and M.B. submitted M.O.'s claim against M.B. to arbitration on May 17.  (ECF 43-5, at 4.)  And, the next day, the arbitrator awarded M.O. a $5.2 million arbitration award against M.B.  On May 24, M.O. filed suit in Jackson County Circuit Court, asserting claims against M.B. for negligence and negligent inflection of emotional distress.  (ECF 43-4, at 4.)  It was at that time that GEICO says it first learned about M.O. and M.B.'s § 537.065 agreement and the $5.2 million arbitration award that M.O. can collect, if at all, only from GEICO.  So GEICO moved to intervene in the Jackson County case and to vacate the arbitration award.  GEICO contends that M.O. and M.B.'s "secret" arbitration was collusive and a sham.  According to GEICO, M.O. and M.B. kept the arbitration a secret "to avoid GEICO's right to intervene and be heard, to fix liability where it otherwise would not attach, and to obtain an artificially inflated award—all in an attempt to pursue insurance proceeds and extra-contractual monies from GEICO."  (*Id.*)  GEICO contends that M.B. must not have presented any substantive defense to M.O.'s claims during the arbitration.  (ECF 43-4, at 4; 43-6, at 2.)

On June 2, M.B. filed an answer to GEICO's complaint in this case.  (ECF 15.)  M.B.'s answer asserts counterclaims seeking a declaratory judgment that GEICO has an obligation to defend and indemnify M.B. for M.O.'s claims against him (Counts I and II) and asserts claims for breach of contract in failing to defend and indemnify M.B. (Count III), for damages resulting from GEICO's alleged bad faith refusal to pay (Count VI), for breach of the duty of good faith and fair dealing (Count V), and for attorneys' fees (Count VI).  (ECF 15 ¶¶ 15-52.)

M.O. has not yet answered.  Instead, she moved to dismiss GEICO's claims against her for lack of personal jurisdiction on the grounds that she lacks sufficient minimum contacts with the state of Kansas.  In support, M.O. contends that she engaged in unprotected sex with M.B. while his 2014 Hyundai Genesis was in Missouri and that she filed her state court lawsuit against him in Missouri.  (ECF 20.)  In response, GEICO says that M.O. has sufficient minimum contacts with Kansas because she demanded that GEICO pay $1 million on behalf of a Kansas resident (M.B.) under a Kansas auto insurance policy.   (ECF 26, at 2.)   Furthermore, under the § 537.065 agreement, M.O. seeks to enforce coverage and garnish on a Kansas auto insurance policy issued to a Kansas resident (M.B.) by purporting to stand in his shoes with respect to coverage, and GEICO contends that a Kansas court "plainly would have jurisdiction over any claim M.B. (a Kansas resident) could make under the Kansas Auto Policy insuring his Kansas automobile." (*Id.* at 3-6.)  And, M.O. claims to have contracted HPV from having sexual intercourse with M.B., at least some of which took place in M.B.'s house in Kansas and in his automobile, which is licensed, titled, and garaged in Kansas.  (*Id.* at 6-7.)

On July 2, the Jackson County Circuit Court granted GEICO's motion to intervene, confirmed the arbitration award, and entered a $5.2 million judgment.  Since then, GEICO has filed motions to amend and vacate the judgment, which it contends was the result of a collusive

and non-adversarial arbitration proceeding.  (ECF 43-3; 43-4.)  GEICO has also moved for a new trial and appealed.  (ECF 43-5 & 43-6.)

On July 27, this court convened a scheduling conference in this case.  At that time, the court explained that it would be entering a show-cause order to address the issue of defendants proceeding by their initials, which is not generally allowed under the Federal Rules of Civil Procedure.  On July 30, the court entered that order to show cause.  (ECF 36.)  The court pointed out that Federal Rule of Civil Procedure 10(a) requires the title of the complaint to "name all the parties."  The court explained that parties must petition the court to proceed anonymously or, absent permission, the court lacks jurisdiction over the unnamed parties.  Therefore, the court ordered M.O. and M.B. to show cause why the court should not order GEICO to file a second amended complaint naming them by their full names.  And the court ordered GEICO to state what, if any, corrective action is necessary to ensure that subject-matter jurisdiction is proper.

M.O. and M.B. responded to the show-cause order (ECF 41 & 43) and moved for leave to proceed by their initials (ECF 42).  GEICO states that it does not object to allowing M.O. and M.B. to proceed anonymously and "seeks only to respect Defendants' previously-stated interests in privacy to the extent permitted by law and this court's discretion."  (ECF 40, at 6-7.)  In a footnote, GEICO further explains that it wishes to avoid any conduct, such as publicly disclosing defendants' identities, that M.B. may later argue constitutes "bad faith conduct" to support M.B.'s counterclaims.  (*Id.* at 6 n.5.)  GEICO's response takes the position that allowing M.O. and M.B. to proceed anonymously does not impact the court's subject-matter jurisdiction.  (ECF 40.)

## II.      SUBJECT-MATTER JURISDICTION

The court turns first to subject-matter jurisdiction because it is a threshold issue that the court must resolve.  GEICO explains that M.O.'s state court petition attached to her $1 million

demand identified both her and M.B. by their initials, which GEICO understood to demonstrate their apparent desire to veil their identities from public disclosure given the sensitive nature of the allegations.  (ECF 40, at 1.)  So, when GEICO filed this lawsuit, it used acronyms because it did not wish to unnecessarily infringe on M.B. and M.O.'s privacy interests.  (*Id.* at 2.)  GEICO points out that, early in the case, it obtained this court's provisional permission to disclose defendants' identities under seal.  (ECF 8.)  GEICO therefore contends that this court has subject matter jurisdiction because the parties' real identities are known to one another and the court, and therefore no additional action is required to perfect jurisdiction.  In other words, GEICO essentially argues that its failure to obtain court permission to proceed anonymously is not a jurisdictional defect at all.

GEICO's position that the issue is not jurisdictional because the parties' identities are known is contrary to binding Tenth Circuit precedent.  As the court stated in its show-cause order, the Tenth Circuit has held that "[a]bsent permission . . . and under such other conditions as the court may impose (such as requiring disclosure of their true identity under seal), *the federal courts lack jurisdiction over the unnamed parties*, as a case has not been commenced with respect to them."  *Nat'l Commodity & Barter Ass'n v. Gibbs*, 886 F.2d 1240, 1245 (10th Cir. 1989) (hereinafter "*NCBA*") (emphasis added); *accord W.N.J. v. Yocom*, 257 F.3d 1171, 1172–73 (10th Cir. 2001) (citing *NCBA* and finding no jurisdiction where plaintiffs did not obtain district court's permission to proceed using initials); *see also M.A.C. v. Gildner*, 853 F. App'x 207, 2021 WL 1016422, at *3 (10th Cir. Mar. 17, 2021) (explaining that this holding from *NCBA* "is still the law of the circuit" and affirming the district court's sua sponte dismissal for lack of subject-matter jurisdiction where a plaintiff did not seek leave to proceed anonymously).

GEICO's focus on the fact that defendants' identities are known confuses the real-party-in-interest requirement in Rule 17 with the requirement against unnamed parties in Rule 10(a). Simply because real parties in interest are actually present in the lawsuit and their identities are known does not mean that jurisdiction exists over unnamed parties in the absence of the court's permission to proceed anonymously. The Tenth Circuit's holding in *NCBA* hinged on the plaintiffs' failure to obtain permission from the district court to proceed anonymously, not because plaintiffs' identities were not otherwise known. 886 F.2d at 1245 ("*Absent permission by the district court to proceed anonymously*, . . . the federal courts lack jurisdiction over the unnamed parties, as a case has not been commenced with respect to them." (emphasis added)). Similarly, in *W.N.J. v. Yocom*, the Tenth Circuit did not consider whether plaintiffs' identities were known. 257 F.3d 1171. In fact, their identities were known because the Tenth Circuit had asked them to file sealed affidavits with their names. *Id.* at 1172. But the court nevertheless found that the plaintiffs' failure to request permission from the district court to proceed anonymously affected the Tenth Circuit's fundamental jurisdiction to hear the appeal. *Id.*; *see also Gildner*, 853 F. App'x at 210 (affirming the district court's sua sponte dismissal without considering whether plaintiff's identity was otherwise known). Accordingly, GEICO's failure to initially obtain permission from the court amounts to a jurisdictional defect.

That is why the court did not order GEICO to show cause whether subject matter jurisdiction exists. Instead, the court ordered GEICO to show cause "to state what, if any, additional corrective action it believes is necessary to ensure that subject matter jurisdiction is proper." (ECF 36, at 3.) In *NCBA*, the Tenth Circuit stated what a party must do to correct this defect: it must obtain permission to proceed anonymously and follow "such other conditions as the court may impose (such as requiring disclosure of their true identity under seal)." 886 F.2d at

1245.  The only arguable lack of clarity on this issue is the timing of when exactly a party must request that permission.  This is because the Tenth Circuit stated in *Yocum* that "[w]hen a party wishes to *file* a case anonymously or under a pseudonym, it must *first* petition the district court for permission to do so."  257 F.3d 1172 (emphasis added).  To the extent that this statement by the Tenth Circuit in *Yocum* suggests that a party must file a motion for leave to proceed by pseudonyms before or contemporaneously with the complaint or other initial pleading, the court believes that this statement was dicta essentially for the reasons articulated in *Doe v. Farmington Municipal Schools*, No. CV 21-103 SCY/KK, 2021 WL 1390777, at *1 (D.N.M. Apr. 13, 2021).  As explained in that case, *Yocum* cited *NCBA* to support this statement, but the Tenth Circuit's holding in *NCBA* rested on the plaintiff's failure to obtain permission from the district court to proceed anonymously at any time before the appeal.  *NCBA*, 886 F.2d at 1245 ("In this case, the unnamed plaintiffs have made no request to the district court to permission to proceed anonymously . . . .  Absent permission by the district court to proceed anonymously, . . . a case has not been commenced with respect to them.").

Likewise, the Tenth Circuit's holding in *Yocum* rested on plaintiffs' failure to obtain the district court's permission to proceed anonymously before they appealed.  257 F.3d 1172.  There, the plaintiffs tried to cure this defect by obtaining a belated nunc pro tunc order from the district court allowing them to proceed anonymously—*after* the district court granted summary judgment and *after* the appeal started.  *Id.* at 1172.  Thus, a proper reading of both *NCBA* and *Yocum* reaffirms the law originally stated in *NCBA* that a case is not commenced with respect to unnamed parties unless and until the district court grants permission for the parties to proceed anonymously and the parties comply with any such conditions the court may impose, such as disclosing their true identities under seal.  Until then, the court has no subject-matter jurisdiction.  That was the case

on appeal in both *NCBA* and *Yocum*, where the parties did not receive the required permission before they appealed.

Consequently, a party that wants to avoid dismissal should seek leave to proceed anonymously early in the case or risk dismissal. *See, e.g., Gildner*, 853 F. App'x at 210 (affirming a sua sponte dismissal three days after plaintiff filed the case). But, in some cases, it may not be feasible for a party to seek leave when the case is filed. For example, in *Farmington Municipal Schools*, the plaintiff could not petition to proceed anonymously before filing because the defendants are the ones that removed the case to federal court. 2021 WL 1390777, at *2. Likewise, in this case, GEICO had no "skin in the game," so to speak, as to whether M.B. and M.O. should be allowed to proceed anonymously. GEICO was simply trying to respect their apparent desire to veil their identities from public disclosure given the sensitive nature of the allegations. Under these circumstances, the onus should be on M.B. and M.O. to obtain the court's permission to proceed anonymously. Yet they were not served nor did they appear in the case until after GEICO filed the case.

M.O. and M.B. have now moved for leave to proceed anonymously, thus setting in motion the proper procedure to ensure the district court's jurisdiction. As explained below, the court grants that motion in part and denies it in part. As long as GEICO complies with the court's order and files an amended complaint after the court rules on M.O.'s pending motion to dismiss, the court finds that this order, coupled with compliance with the directives herein, remedy any jurisdictional defect that previously existed. *See Weissenbach v. Tuscaloosa Cty. Sch. Sys.*, No. 7:17-CV-01642-LSC, 2018 WL 9986741, at *3 (N.D. Ala. June 5, 2018) (finding a Rule 10(a) violation and jurisdictional defect could be cured via a motion to amend that would correct the case caption to include plaintiff's full legal name).

## III.   PROCEEDING ANONYMOUSLY

Next, the court turns to the issue of the extent to which defendants should be allowed to proceed anonymously.  The Federal Rules of Civil Procedure do not contemplate non-minors proceeding anonymously or by initials.  *See NCBA*, 886 F.2d at 1245; *see also* FED. R. CIV. P. 5.2(a) (requiring minors to be named by initials in court filings).  As stated above, if a party seeks to proceed anonymously, it must petition the court to do so.  *Yocom*, 257 F.3d at 1172.  Adopting the Eleventh Circuit's standard, the Tenth Circuit has stated that,

> Lawsuits are public events.  A [party] should be permitted to proceed anonymously only in exceptional cases involving matters of a highly sensitive and personal nature, real danger of physical harm, or where the injury litigated against would be incurred as a result of the disclosure of the [party's] identity. The risk that a [party] may suffer some embarrassment is not enough.

*Femedeer v. Haun*, 227 F.3d 1244, 1246 (10th Cir. 2000) (quotation omitted).  In making this determination, the court must weigh the movant's privacy interest against the public's interest in open court proceedings.  *M.M. v. Zavaras,* 139 F.3d 798, 803 (10th Cir.1998).  In doing so, the court must exercise "informed discretion," considering all relevant factors.  *Id.*

### A.     The Public's Interest in Open Court Proceedings

Courts recognize the public's general right to inspect and copy public records and documents, including judicial records and documents.  *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978); *see also Cox Broad. Corp. v. Cohn,* 420 U.S. 469, 492 (1975) ("A trial is a public event. What transpires in the court room is public property.").  This includes a public interest in knowing the litigants' identities.  *See Raiser v. Church of Jesus Christ of Latter-Day Saints*, 182 F. App'x 810, 811 (10th Cir. 2006); *Doe v. Blue Cross & Blue Shield United of Wisconsin*, 112 F.3d 869, 872 (7th Cir. 1997) ("Identifying the parties to the proceeding is an important dimension of publicness.  The people have a right to know who is using their courts.").  These interests "are

presumptively paramount[] against those advanced by the parties." *Crystal Grower's Corp. v. Dobbins*, 616 F.2d 458, 461 (10th Cir. 1980). And although certain factors may heighten the public's interest—such as cases involving public figures or public funds—the public's interest in routine court proceedings is still significant. *See Zavaras*, 139 F.3d at 803 (considering the plaintiff's claim to relief involved "the use of public funds, and the public certainly has a valid interest in knowing how state revenues are spent"); *Doe v. Weinstein*, 484 F. Supp. 3d 90, 97 (S.D.N.Y. 2020) (noting the strong public interest in the allegations against Harvey Weinstein and his accusers, some of which were public figures); *Roe v. Cath. Health Initiatives Colo.*, No. 11-CV-02179-WYD-KMT, 2012 WL 12840, at *5 (D. Colo. Jan. 4, 2012) (suit against a private rather than public employer lessened public interest). As one court observed, "[t]here is a significant interest in open judicial proceedings even in ordinary civil litigation between private parties" because "[p]rivate civil suits, individually and certainly in the aggregate, do not only advance the parties' private interests, but also further the public's interest in enforcing legal and social norms." *Doe v. Del Rio*, 241 F.R.D. 154, 158–59 (S.D.N.Y. 2006).

Although this case does not involve the use of public funds or public figures, the public's interest is still significant. M.O. and M.B. try to characterize this case as one involving personal and intimate details of their sexual relationship. But this does not accurately characterize the nature of the case. This case is now an insurance coverage dispute where the auto and umbrella coverage policies at issue appear to be like many others. And this case presents novel and potentially important issues about whether an insurance carrier can be held liable under such policies for the consequences of two adults voluntarily having unprotected sex in the insured's automobile. Interpretation of these policies could have far-reaching implications for other policies with similar terms. Furthermore, if the policies provide coverage, the details of their sex lives could bear on

relevant issues like causation and the extent of M.O.'s damages.  For example, discovery regarding other sexual partners could be relevant to determining whether M.O.'s infection was caused by M.B.  And because the two engaged in unprotected sex and it is disputed whether M.O. knew that M.B. had HPV, there could be issues as to M.O.'s fault.  The insurance policies at issue include an auto policy on M.B.'s vehicle and an umbrella policy, but M.O. and M.B. apparently also had sex in M.B.'s home and potentially other locations—raising the issue of when and where the virus was actually transmitted.  (ECF 26, at 2.)  According to GEICO, M.B. raised none of these defenses at what GEICO contends was a non-adversarial and collusive arbitration proceeding resulting in a $5.2 million award that the state court confirmed.  In short, this case presents novel and potentially important issues, and its outcome could have persuasive value on other insurance coverage disputes.

Furthermore, any allegedly private details became less private (although the court questions how private those details actually were if they were having sex in a car) when M.O. sent GEICO a demand letter making an insurance coverage claim.  By doing so, she brought any arguably private matters into the more public domain.  M.O. and M.B. then settled M.O.'s liability claim by entering into the § 537.065 agreement and subsequently participating in the allegedly collusive arbitration proceeding—resulting in M.O. obtaining an extra-contractual $5.2 million judgment that she can collect only from GEICO, not M.B.  And M.B. has now asserted counterclaims against GEICO for coverage.  In short, M.O. and M.B. foisted this matter into a public court proceeding by the ways in which they have and are pursuing coverage from GEICO. In general, parties who assert damage claims should expect some level of public exposure in employing the courts to resolve their disputes.  *See, e.g.*, *Doe v. Colgate Univ.*, No. 5:15-CV-1069 LEK/DEP, 2015 WL 5177736, at *2 (N.D.N.Y. Sept. 4, 2015) ("Plaintiff has voluntarily opted to

commence this litigation and air his grievances in a quintessentially public forum."); *Doe v. F.B.I.*, 218 F.R.D. 256, 259 (D. Colo. 2003) ("By initiating an action for damages based on the FBI's disclosure of Plaintiff's confidential File, Plaintiff has chosen to bring a private matter into the public eye.").

### B.     Balancing Defendants Privacy Interests Against the Public's Interest in Open Court Proceedings

Having considered the public's interest in open court proceedings, the court turns next to the movants' privacy interests.

### 1.     M.O.'s and M.B.'s Asserted Privacy Interests

M.O. and M.B. contend that this is an exceptional case involving matters of a highly sensitive and personal nature.  The court recognizes that the Tenth Circuit has observed that matters involving or related to sexual intimacy may, but do not always, implicate privacy interests sufficient to warrant allowing parties to proceed anonymously.  *See Coe v. U.S. Dist. Ct. for Dist. of Colo.*, 676 F.2d 411, 416 (10th Cir. 1982) (collecting cases allowing pseudonyms for cases involving matters such as birth control, abortion, and sexual orientation but finding no error in the district court's conclusion that a plaintiff physician's privacy interest concerning patient allegations of sexual impropriety did not outweigh the public's interest); *see also Yocom*, 257 F.3d at 1172 (noting that "[s]ignificant privacy interests, such as plaintiffs' interest in keeping their sexual habits from public scrutiny," may constitute a case where a party may proceed under a pseudonym but not deciding the issue because it lacked subject-matter jurisdiction).

For example, courts typically afford heightened protection to parents prosecuting claims on behalf of minor children who were allegedly subjected to sexual misconduct or harassment. *See, e.g., L.M. as Next Friend of A .M. v. City of Gardner*, No. 19-2425-DDC, 2019 WL 4168805, at *2 (D. Kan. Sept. 3, 2019) (allowing a plaintiff prosecuting a suit on behalf of a minor child to

proceed anonymously in a case involving allegations of rape and sexual assault to the minor and noting that courts grant heightened protection to child victims and have concluded that complaints involving minors are matters of a highly sensitive and personal nature); *S.E.S. v. Galena Unified Sch. Dist. No. 499*, No. 18-2042-DDC-GEB, 2018 WL 3389878, at *2 (D. Kan. July 12, 2018) (parents could proceed anonymously in a Title IX suit seeking damages for sex and gender discrimination against a minor); *see also Doe v. USD No. 237 Smith Ctr. Sch. Dist.*, No. 16-CV-2801-JWL-TJJ, 2017 WL 3839416, at *10 (D. Kan. Sept. 1, 2017) (plaintiff, a minor when she filed suit, could continue to proceed by pseudonym after reaching the age of majority in a case involving allegations of sexual harassment by a popular football coach because the events occurred while she was a minor).  In those cases, allowing the adult parent to proceed anonymously amounts to a recognition that ordering disclosure of the parent's identity could result in the identification of the minor child.  *Galena*, 2018 WL 3389878, at *2.  But courts have not reached uniform conclusions with respect to cases involving adults and matters of a sexual nature.  For example, some judges in this district have denied motions for adult plaintiffs to proceed anonymously in cases involving allegations of sexual assault.  *See Doe H. v. Haskell Indian Nations Univ.*, 266 F. Supp. 3d 1277, 1289 (D. Kan. 2017) (denying plaintiff's motion to proceed by a pseudonym in a case stemming from the former college student's alleged sexual assault on campus); *C.S. v. EmberHope, Inc.*, No. 19-2612-KHV, 2019 WL 6727102, at *2 (D. Kan. Dec. 11, 2019) (denying leave to proceed anonymously in a case involving an alleged sexual-assault victim when the abuse occurred decades earlier).

But these cases are only marginally informative because the facts of this case do not involve minors or extremely sensitive issues such as sexual assault.  Rather, the allegations in the pleadings that defendants contend are "of a highly sensitive and personal nature" involve commonplace adult

sexual behavior, including the transmission of one of the most common STDs.[1]  Although there is no bright-line rule, sexual behavior or preferences that are considered conventional or within the bounds of societal norms are generally "accepted without controversy, ridicule or derision" and therefore present a less compelling reason to proceed anonymously.  *Patton v. Entercom Kansas City, LLC*, No. CIV.A. 13-2186-KHV, 2013 WL 3524157, at *2 (D. Kan. July 11, 2013) (denying a motion to proceed anonymously where a plaintiff sued after a radio station identified her as a "local porn star" because plaintiff vehemently denied that she was, and therefore her behavior did not fall outside societal norms); *cf. Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 687 (11th Cir. 2001) (reversing the denial of the plaintiff's motion to proceed anonymously in a case involving abortion because of the social stigma associated with the decision to obtain an abortion, among other reasons).

In sum, most of the case law addressing matters of sexual intimacy involves distinguishable fact patterns, no rule emerges that would govern here, and no case is sufficiently analogous to have meaningful persuasive value.  The court is therefore guided by the Tenth Circuit's straightforward mandate that a party should be allowed to proceed anonymously only in an "exceptional case."  *Femedeer*, 227 F.3d at 1246.  The court has difficulty finding that allegedly transmitting HPV while two adults voluntarily have unprotected sex is anything but commonplace.  Commonplace adult sexual behavior, without more, does not present the exceptional case justifying restricted public access.  *See Doe v. The Rector & Visitors of George Mason Univ.*, 179 F. Supp. 3d 583, 593 (E.D. Va. 2016) (distinguishing between embarrassing sexual conduct involving BDSM,

---

[1] The Centers for Disease Control and Prevention estimates that "[n]early everyone will get HPV at some point in their lives."  Centers for Disease Control and Prevention (Aug. 27, 2021), https://www.cdc.gov/hpv/parents/about-hpv.html.

which would not justify allowing plaintiff to proceed anonymously, and conduct that could subject a person to ridicule or danger, such as being accused of sexual misconduct).

### 2.        The Asserted Privacy Interests are Misplaced

More to the point, M.O. and M.B. misconstrue the asserted privacy interests that are at stake.  Again, this is not a case solely between parties who were involved in a sexual relationship. Rather, it is an insurance coverage dispute.  To that end, the more applicable cases are those in which parties have sought leave to proceed anonymously in the context of insurance coverage disputes.  Those cases often involve sensitive and potentially embarrassing details of individuals' physical or mental conditions or private lives generally.  But courts generally disallow parties to proceed anonymously, finding the public's interest outweighs the movants' privacy interests.  *See, e.g., United Fin. Cas. Co. v. R.A.E., Inc.*, No. CV 20-2467-KHV, 2020 WL 6117895, at *2 (D. Kan. Oct. 16, 2020) (disallowing a parent to proceed anonymously in a declaratory judgment action involving a dispute about insurance coverage for a minor student molested on an insured bus); *UNUM Life Ins. Co. of Am.*, 164 F. Supp. 3d at 1145 (well-known lawyer who had practiced at a prominent law firm and suffered from debilitating mental illness could not anonymously litigate his claim for denial of ERISA benefits); *MacInnis v. Cigna Grp. Ins. Co. of Am.*, 379 F. Supp. 2d 89, 90 (D. Mass. 2005) ("In short, it is difficult to perceive disclosure of a depressive/anxiety disorder as presenting the 'exceptional' case for which anonymity was intended.").  As one court observed, health benefit denials "routinely involve disclosure of mental and physical illnesses," just as "the medical histories of tort victims are a common subject of negligence and medical malpractice cases."  *MacInnis*, 379 F. Supp. 2d at 90.

While many people would prefer to keep details about their sex lives' private, the Tenth Circuit has repeatedly made clear that the risk that a party may suffer some embarrassment by

being named in the pleadings is not enough to allow them to proceed anonymously.  *Femedeer*, 227 F.3d at 1246 ("The risk that a [party] may suffer some embarrassment is not enough."); *see also Goico v. Kansas*, 773 F. App'x 1038, 1040 (10th Cir. 2019) (same); *Raiser*, 127 F. App'x at 411 ("The risk that a plaintiff may suffer some embarrassment is insufficient to permit anonymity."); *Zavaras*, 139 F.3d 803 (quoting *Femedeer* for its proposition that embarrassment is insufficient).  The court therefore examines the record to see whether it reveals something more that would make this an "exceptional case."

M.O. and M.B. come forward with only conclusory assertions of harm without relying on any specific facts to show any identifiable harm by litigating in their real names.  M.O. contends that she and her minor children would suffer potential emotional and psychological harm if her identity is disclosed, but she provides no details about how this is the case.  In support, M.O. relies on *Doe B.A. v. USD 102* to argue that the disclosure of her identity could harm her minor children. No. 18-2476-CM, 2019 WL 201741, at *2 (D. Kan. Jan. 15, 2019).  But *USD 102* involved sensitive allegations of sexual harassment to the *minor* victim, which subjected the minor's parent to heightened protection to protect the minor's identity.  Unlike in that case, M.O.'s argument essentially asserts in conclusory fashion that her children should be protected from psychological harm because her sex life is embarrassing.  But the mere fact that a parent's sex life might be embarrassing to the minor children does not present an exceptional case that warrants granting leave to proceed anonymously, particularly when that individual is seeking insurance coverage as a result of his or her sex life.

Likewise, M.B. contends that revealing his identify would subject him to social shame, ridicule, embarrassment, and humiliation that could "devastate his employment, professional relationships, family, life, jeopardize his future political and personal opportunities and provoke

further unwarranted and resource-consuming investigations."  (ECF 43, at 6-7.)  But courts do not allow parties to proceed anonymously when only economic or professional concerns are involved. *NCBA*, 886 F.2d at 1245.  And, like M.O., M.B. also provides no facts.  Indeed, the court does not know M.O.'s or M.B.'s professions, whether M.B. has realistic future political prospects, what additional investigations would be prompted by disclosure of their identities, what future opportunities would be impacted, or if the nature of their relationship makes it more scandalous— for example, if one or both were married, if they had a supervisor-employee relationship, or if any special circumstances would cause psychological harm to M.O. and her children beyond simply the embarrassment of having their mother's sexual history disclosed.   While courts have recognized that reputational harm or social stigma may exceed embarrassment and present a compelling reason for allowing a party to proceed anonymously, they have done so only when the moving party makes a sufficiently particularized and supported showing of reputational harm or social stigma to justify the request.  *See, e.g.*, *Doe v. Neverson*, 820 F. App'x 984, 987–88 (11th Cir. 2020) (district court erred by not sufficiently considering that plaintiff's allegations of sexual assault would bring shame to her and her family of devout Muslims); *Doe v. Doe*, No. 20-CV-5329(KAM)(CLP), 2020 WL 6900002, at *3 (E.D.N.Y. Nov. 24, 2020) (significant risk of reputational harm to a partner at a well-known New York law firm and adjunct law school instructor accused of paying for companionship and sex, infecting plaintiff with sexually transmitted diseases, and sexually assaulting her).  Here, the parties have presented no such facts.

Furthermore, courts are generally disinclined to allow parties to proceed anonymously if their identity has already been disclosed publicly or in court filings.  *See Raiser*, 182 F. App'x at 811 ("In cases where the sensitive information has already been disclosed during a party's prior litigation under its real name, the social interest in allowing a party to proceed anonymously is

limited."); *Patton,* 2013 WL 3524157, at *2 ("The evidence presented shows that the 'cat is already out of the bag,' and the Court will not attempt to put it back."). Here, M.O.'s last name has not been kept confidential because it appears as part of the public record. In responding to the show-cause order, M.B. submitted exhibits that have M.O.'s last name in the PDF title. (ECF 43-2, 43-3, 43-4 & 43-5.) To the extent that M.O. is identifiable by her last name, M.B. has also rendered himself at least somewhat identifiable given that they were engaged in a relationship for a period of time. M.B.'s disclosure of M.O.'s last name in this case weighs at least somewhat against allowing either of them to proceed anonymously.

Furthermore, the protective order already entered in this case provides a mechanism to give the parties at least some of the protection they seek. For example, M.B. raises arguments that this case is likely to involve discovery of his protected health information. "But the fact that a case involves a medical issue is not a sufficient reason for allowing the use of a fictitious name, even though many people are understandably secretive about their medical problems." *Doe v. Blue Cross & Blue Shield United of Wisconsin ("BCBS")*, 112 F.3d 869, 872 (7th Cir. 1997) (Posner, J.). Rather, the protective order allows the parties to designate claimant health information as confidential. (ECF 38 ¶ 2.) And on an appropriately supported motion, select documents in this case might meet the standard for filing under seal. *See BCBS*, 112 F.3d at 872 (suggesting that sealing specific documents is the appropriate mechanism to deal with a sensitive medical issue).

### 3.    M.O.'s Pending Motion to Dismiss

Although M.O.'s and M.B.'s privacy interests do not outweigh the public's right of access, the procedural posture of this case is unique in that M.O. has also filed a motion to dismiss for lack of personal jurisdiction. That motion essentially contends that M.O. should not be forced to litigate in this court. The motion raises the possibility that M.O. should not have been hauled into this

lawsuit in the District of Kansas and, as a consequence, subjected to the requirement in Federal Rule of Civil Procedure 10(a) that pleadings must contain the parties' names.  M.O. and M.B. report that they have been allowed to proceed anonymously in both Jackson County Circuit Court and in the arbitration proceeding, which apparently have more lenient standards for anonymous litigants.  On this, M.O. raises a fair point.  The court is willing to grant some latitude—at least temporarily—until the court rules on M.O.'s motion to dismiss.  The parties should not be forced to disclose M.O.'s identity in order to satisfy Federal Rule of Civil Procedure 10(a) if she should never have been subjected to that rule.

For this reason, the court directs GEICO to file a second amended complaint naming all remaining defendants by their full names within seven calendar days after the court issues a ruling on M.O.'s motion to dismiss.  The court recognizes that M.B. has not moved to dismiss and so he will inevitably remain in the case regardless of whether the court grants M.O.'s motion to dismiss for lack of jurisdiction.  However, requiring GEICO to file multiple rounds of amended pleadings, which would necessitate responsive pleadings, is not an efficient use of the parties' resources or in line with Rule 1's directives.  Moreover, the court can discern no harm to the public's right of access to briefly delay disclosure.

## IV.   <u>CONCLUSION</u>

On balance, M.O. and M.B. have not established that this is an exceptional case to allow them to proceed anonymously.  Although this case involves details of a highly sensitive and personal nature—namely, alleged transmission of HPV via two adults who voluntarily had unprotected sex—this is not unusual by today's standards.  M.O. and M.B. have come forward with only conclusory assertions of harm from disclosure, and therefore the court cannot say that disclosure of their identities would rise to the level of anything except embarrassment, which is

insufficient under Tenth Circuit precedent.  Viewed in that context, any remaining privacy interests the movants have do not outweigh the public's interest in open court proceedings.  Indeed, the details of their relationship are less private in the context of the nature of the case, in which defendants assert insurance coverage claims that present novel and arguably important legal issues that will likely be of interest to other insurance companies and insureds.  However, given the possibility that this court lacks personal jurisdiction over M.O., the court will delay its order directing GEICO to file a second amended complaint naming defendants pending the court's ruling on M.O.'s motion to dismiss.  For these reasons, the court grants M.O. and M.B.'s motion to the extent that they may proceed by anonymously pending the court's ruling on M.O.'s motion to dismiss.  The motion is denied to the extent that any remaining defendants seek to proceed anonymously thereafter.

M.O. and M.B.'s alternative request that the court seal the entire case is summarily denied for the same reason the court denies their request to proceed anonymously.  This alternative request seeks an even greater restriction of public access than the initial request.  That M.O. and M.B. cannot meet the legal standard to proceed anonymously in no way satisfies the legal standard to seal an entire case.  *See, e.g.*, *Patton*, 2013 WL 3524157, at *3 (summarily denying a similar motion for leave to proceed under seal made in the alternative to plaintiff's motion for leave to proceed anonymously).  As explained above, there is a protective order in the case, and M.O. and M.B. can seek leave to file individual documents under seal under D. KAN. RULE 5.4.6.

**IT IS THEREFORE ORDERED** that Defendants' Joint Motion for Leave to Proceed Using Initials or Anonymously (ECF 42) is granted in part and denied in part as set forth above. Specifically, it is granted to the extent that the court will allow them to proceed anonymously until the court rules on M.O.'s motion to dismiss.  It is denied to the extent that, within seven calendar

days thereafter, GEICO must file a second amended complaint that names the remaining defendant(s) by their real names or the court will recommend that the district judge dismiss the case for lack of subject matter jurisdiction.

**IT IS SO ORDERED.**

Dated September 30, 2021, at Topeka, Kansas.

<u>s/ Angel D. Mitchell</u>
Angel D. Mitchell
U.S. Magistrate Judge